AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

| | |
|---|---|
| United States of America )<br>v. )<br>JAMES SMILEY JR. )<br>(YOB 1969) )<br>)<br>)<br>)<br>*Defendant(s)* | Case No. 25-MJ-383 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __February 28, 2025__ in the county of __San Juan__ in the
_____ District of __New Mexico__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1153 and 113(a)(3) | Assault with a Dangerous Weapon in Indian Country |

This criminal complaint is based on these facts:

See attached affidavit, incorporated by reference, submitted by SA Jared Harshbarger and approved by SAUSA Elisa Dimas.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

SA Jared Harshbarger
*Printed name and title*

Telephonically sworn and electronically signed.

Date: March 5, 2025

_____
*Judge's signature*

City and state: Albuquerque, New Mexico       LAURA FASHING, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMES SMILEY Jr.,<br>Year of birth: 1969 | Case No. _____<br><br>AFFIDAVIT IN SUPPORT OF COMPLAINT |

I, Jared Harshbarger, being duly sworn, state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since January 2021. I am currently assigned to the Albuquerque Field Office, Farmington Resident Agency. My primary duties as a Special Agent with the FBI include investigating crimes occurring in Indian Country which include primarily investigating violent crimes that involve murder, assault, and felon in possession. I am familiar with the investigation and prosecution of violent crimes occurring in Indian Country, including the use of warrants to search for evidence. I have gained experience in the conduct of such investigations through previous case investigations, formal training, and in consultation with law enforcement partners in local, state, tribal and federal law enforcement agencies. As a Federal Agent, I am authorized to investigate violations of the laws of the United States and have authority to execute arrest and search warrants issued under the authority of the United States.

2. This affidavit is based upon my personal knowledge, and upon information reported to me by other federal, state, tribal, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable.

Throughout this affidavit, reference will be made to law enforcement officers. Law enforcement officers are those federal, state, tribal, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation. This affidavit is also based upon information gained from interviews with victims, whose reliability is established separately herein.

3. This affidavit is being submitted in support of a criminal complaint charging James Smiley Jr. (**SMILEY**) with 18 U.S.C. §§ 1153 and 113(a)(3), that being Assault with a Dangerous Weapon in Indian Country.

## PROBABLE CAUSE

4. On February 28, 2025, at approximately 9:44 PM, Navajo Nation Police Officers (NNPD) were dispatched to approximately 1-2 miles northeast of Toadlena School (Community of Two Grey Hills, New Mexico) in response to a report of a man who committed aggravated assault of a family with a gun. Upon arrival, officers observed John Doe 1, who opened the door when officers knocked and announced their presence. Victim(s) at the scene provided statements indicating that their family related uncle, SMILEY, had come over intoxicated and threatened the family with a black small handgun, then discharged the firearm towards the ceiling area of the residence. SMILEY then walked off from the location.

5. NNPD arrived at SMILEY'S residence located at a small white travel trailer just approximately .2 miles north from Victim(s) residence. Navajo Nation Police Officers attempted to call SMILEY out of his residence using the Public Announcement (PA) from the marked unit due to SMILEY having a handgun. NNPD attempted to call

SMILEY out multiple times with no response. NNPD Officer in Charge Roberta Clitso contacted next shift Sergeant Eldon Foster regarding the incident and was write a report and refer to Navajo Nation Criminal Investigation Department.

6. On March 3, 2025, FBI Special Agent Jared Harshbarger and Navajo Nation Criminal Investigator Jefferson Joe interviewed John Doe 1 and John Doe 2 and John Doe 3. John Doe 3 was present but unable to speak to law enforcement due to a disability.

7. On March 3, 2025, John Doe 1 advised the following: On February 28, 2025, John Doe 1, John Doe 2, John Doe 3, T.L., and SMILEY were at the John Doe 1's residence located at GPS 36.247512, -108.888248, drinking alcohol and watching Rez Ball. John Doe 1 said they did not drink that much alcohol, but SMILEY seemed intoxicated. There were no issues between the individuals at the residence when SMILEY left the residence. SMILEY said he was going home to go to sleep.

8. Approximately an hour later, SMILEY returned to the residence with a small black .22 caliber pistol. SMILEY shot the firearm into the ceiling. The sound from the discharge of the firearm caused ringing in John Doe 1's ear. SMILEY then pointed the firearm at John Doe 1, John Doe 2, and John Doe 3. John Doe 3 is elderly and disabled. John Doe 1 felt like he was a hostage for approximately 20 minutes. SMILEY threatened to kill them all. As SMILEY pointed the firearm at them, they tried to dodge the gun. SMILEY put the gun to John Doe 1's head while threatening to kill him. John Doe 1 was in fear for his life. SMILEY said "I don't care, I will kill you guys. I am a Felon; I know I will go to jail".

3

9. SMILEY was a neighbor and lived nearby in a white trailer. John Doe 1 felt that SMILEY could easily do this again since they live so close to each other. John Doe 1 advised that if one of them ends up dead, SMILEY was the one that likely did it.

10. The trailer identified by John Doe 1 as SMILEY'S residence was located at GPS 36.249053, -108.888137.

11. SMILEY came back to the John Doe 1's residence in the morning and apologized for his actions the previous day. However, John Doe 1 did not trust SMILEY. SMILEY told John Doe 1 that he blacked out and didn't remember what he did.

12. During the incident on February 28, 2025, at 3:07 PM. John Doe 1 texted his nephew, "if we are dead James did it".



13.

14. On March 3, 2025, John Doe 2 advised the following: On February 28, 2025, John Doe 2 and others were drinking alcohol and watching a movie at the John Doe 1's residence. SMILEY was present with the group for some time, then said bye to the group, and left his nephew T. L. at John Doe 1's house while SMILEY went home. When the movie was almost over, at approximately 3:00 PM, SMILEY came back to the residence with a small black, .22 caliber pistol. SMILEY shot once into the ceiling, and it sounded like a firecracker. SMILEY said, "you think I'm playing with you guys; you want to jump me or what". John Doe 2 said there was no situation and no point where it would be like that. SMILEY said, "you don't think I went to prison; you don't think I went to prison". John Doe 2 knew SMILEY went to prison for rape.

15. John Doe 2 was unsure about what was going on during the incident. John Doe 2 was in fear for his life. John Doe 2 tried to stay calm and comply with what SMILEY was telling them to do. John Doe 2 felt like a hostage because SMILEY had a gun the whole time and pointed it at them. If anyone spoke back to SMILEY, SMILEY would put the firearm to their head. SMILEY said "you're going to die tonight. you're going to die, you're going to die", "who are you? you're dead". John Doe 2 thought SMILEY was going to shoot them all.

16. John Doe 2 was afraid SMILEY might come back to harm them in retaliation.

17. The next morning SMILEY came back to the house. John Doe 2 asked if SMILEY still had the gun. SMILEY advised that he put the gun away, to the point where no one will find it now.

18. John Doe 2 has been unable to sleep because he was worried SMILEY would come back.

19. A review of SMILEY'S criminal history reveals aggravated sexual abuse, probation violations, battery upon a peace officer, and resisting or obstructing an officer.

20. Upon information and belief, SMILEY is a convicted felon for aggravated sexual abuse.

## JURISDICTIONAL INFORMATION

21. As referenced above the incident occurred on the Navajo Nation Reservation. Specifically, investigators determined the location to be near Global Position System (GPS) Coordinates: 36.247512, -108.888248, where the incident on February 28, 2025 took place, is within the exterior boundaries of the Navajo Indian Reservation.

22. John Does 1, 2, and 3 as well as SMILEY are enrolled members of the Navajo Nation and are Indians for purposes of federal law.

## CONCLUSION

23. Based on the above information, I submit that there is probable cause to believe that SMILEY violated 18 U.S.C. §§ 1153 and 113(a)(3), that being Assault with a Dangerous Weapon in Indian Country.

24. Therefore, I respectfully request that the Court approve the attached criminal complaints and issue arrest warrants.

25. This complaint was reviewed and approved by Supervisory Assistant United States Attorney Elisa Dimas.

_____
Jared Harshbarger
Special Agent
Federal Bureau of Investigation


Subscribed to and telephonically sworn before me
this __5th__ day of March 2025

_____
LAURA FASHING
United States Magistrate Judge